**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ANGELA READING, <br><br> Plaintiff, <br><br> v. <br><br> NORTH HANOVER TOWNSHIP, *et al.*, <br><br> Defendants. | HONORABLE KAREN M. WILLIAMS <br><br> Civil Action <br> No. 23-1469-KMW-SAK <br><br> **OPINION** |

APPEARANCES:

CHRISTOPHER A. FERRARA, ESQ.
THOMAS MORE SOCIETY
420 ROUTE 46 EAST, SUITE 12
FAIRFIELD, NJ 07004

    *Counsel for Plaintiff Angela Reading*

MATTHEW J. BEHR, ESQ.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
15000 MIDATLANTIC DRIVE, SUITE 200
P.O. BOX 5429
MOUNT LAUREL, NJ 08054

    *Counsel for Defendant Robert Duff*

MARK WILLIAM STRASLE, ESQ.
MICHAEL VINCENT MADDEN, ESQ.
MADDEN & MADDEN PA
108 KINGS HIGHWAY EAST, SUITE 200
P.O. BOX 210
HADDONFIELD, NJ 08033

    *Counsel for Defendant Helen Payne*

HEATHER CARNEY COSTANZO, ESQ.
DOJ-USAO
DISTRICT OF NEW JERSEY
401 MARKET STREET, P.O. BOX 2098
CAMDEN, NJ 08101

JOHN FRANCIS BASIAK, ESQ.
U.S. ATTORNEY'S OFFICE
402 E. STATE STREET, ROOM 430
TRENTON, NJ 08608

> *Counsel for Defendants Colonel Wes Adams, Colonel Robert Grimmett, Lieutenant Colonel Megan Hall, Major Nathaniel Lesher, Major Christopher Schilling, Joseph Vazquez, Colonel Mitchell Wisniewski*

WILLIAM R. BURNS, ESQ.
KALAVRUZOS, MUMOLA, HARTMAN, LENTON & DUFF LLC
29 HADLEY AVENUE
TOMS RIVER, NJ 08753

> *Counsel for Defendant Major Christopher Schilling,*

**WILLIAMS, District Judge:**

## I. INTRODUCTION

This matter comes before the Court on a Motion for Preliminary Injunction filed by Plaintiff Angela Reading ("Plaintiff") (ECF No. 38). The case arises out of the Free Speech Clause of the First Amendment to the United States Constitution. Plaintiff, a former School Board member and mother of two young children formerly in North Hanover Township schools, brings this action against nine individuals, all of whom are local officials affiliated with either North Hanover Township, North Hanover Township Public Schools, or the U.S. military at Joint Base McGuire-Dix-Lakehurst who are alleged to have censored and retaliated against Plaintiff—either individually or in concert with each other—for certain views she expressed in a November 2022 Facebook post.

Plaintiff alleges that Defendants have not only censored her but have continued to harass and intimidate her in a manner that chills her free expression. For this reason, Plaintiff moves pursuant to Federal Rule of Civil Procedure 65(a) for the entry of a preliminary injunction against Defendants, to enjoin them from interfering with social media posts containing "protected free speech." *See* Pl.'s Revised Proposed Order (ECF No. 67).

## II. BACKGROUND

### A. Procedural History

Plaintiff initiated the instant matter on March 15, 2023, by filing a Verified Complaint (ECF No. 1) and thereafter amended her Complaint on April 20, 2023. (ECF No. 32). On May 4, 2023, almost two months after filing her initial complaint and more than five months after the Defendants took actions that lead to the removal of Plaintiff's Facebook post, Plaintiff filed the instant motion. (ECF No. 38). Defendants have all opposed the motion: Defendant Robert Duff,

3

Chief of Police for Hanover Township ("Duff") (ECF No. 55); Defendant Helen Payne, Superintendent of North Hanover Schools ("Payne") (ECF No. 56); Colonel Wes Adams, Colonel Robert Grimmett, Colonel Mitchell Wisniewski, Lieutenant Colonel Megan Hall, Major Nathaniel Lesher, Major Christopher Schilling, and Joseph Vazquez, (collectively, the "Military Defendants") (ECF No. 58). Plaintiff provided a reply (ECF No. 66). In addition, the Court has considered Plaintiff's submissions of supplemental authority, (ECF Nos. 67, 76), and Defendants' objection to same (ECF Nos. 70, 77). On October 6, 2023, the Court held oral argument on this motion. Having received and considered these written submissions as well as the arguments heard on the record, and for the reasons set forth below, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction.

### B. Relevant Facts

For purposes of the instant motion, the Court will limit its recitation of the facts to those necessary to resolve the Preliminary Injunction. Succinctly stated, Plaintiff alleges that Defendants violated her rights pursuant to the First Amendment of the United States Constitution by abridging her freedom of speech when Defendants allegedly caused and or directed the removal of a post she wrote on a public Facebook page about a poster she saw in her local elementary school that she found personally disconcerting.[1] Defendants contend that the traffic generated by Plaintiff's post posed a risk to the safety and security of the elementary school which prompted their responses and the ultimate removal of Plaintiff's Facebook post from that particular public Facebook group.

The issues in this case arise from a public elementary school's "Week of Respect" initiative, where students were invited to create posters that demonstrated that the school was "a safe place where everyone was accepted." Pl.'s Amend. Compl. at Ex. 33. On November 21, 2022,

---

[1] For ease of reference the Court will refer to the right Plaintiff seeks to protect as freedom of speech, which is the focus of her preliminary injunction.

4

Plaintiff visited the elementary school with her daughters for "Math Night." Pl.'s Amend. Compl. ¶31. According to Plaintiff, while walking through the school hallway, she and her two daughters, ages 6 and 7, noticed a wall covered with various posters "seemingly created by students." Pl.'s Amend. Compl. ¶¶31-32. Upon closer inspection, Plaintiff observed that at least two of the posters contained flags and certain terms related to gender-identity and sexual-orientation. *Id. See also* Pl.'s Preliminary Injunction ("P.I.") at 2; *see also* Pl.'s Amend. Compl. at Ex. 1. One poster included the terms "transgender," "agender," "polysexual," "genderfluid," "bi," "LGBT Pride," "pansexual," and "genderqueer," along with student penned slogans such as "Don't be ashamed of who you are," "stay true to you," and "You are who you are." *Id.* Plaintiff asserts that she was concerned about presence of these posters in the elementary school and also questioned whether these posters were actually the work of the students. Pl.'s P.I. at 2-3.

On November 22, 2022, Plaintiff published a post on Facebook to a public group named "NJ Fresh Faced Schools." Pl.'s P.I. at 3. In this post, Plaintiff first contends that the school and its teachers improperly influenced or otherwise exposed children to sexual content. *See* Pl.'s Amend. Compl. at Ex. 1.[2] Plaintiff further expressed her view that such exposure was inappropriate given the young ages of the students. *Id.* Plaintiff's post identified the school district and the poster that was depicted in the post revealed the name of the elementary school. *Id.* Subsequently, Plaintiff's Facebook post, and the controversy stemming from it, was rapidly disseminated to other social media platforms and outlets.[3] In the wake of her post, Plaintiff alleges that Defendants, who

---

[2] "Are adults talking about their sexual life with my kids and are looking for affirmation?"; "And kids are only talking about it on the playground because it's being forced on them by teachers, home, and by unsupervised social media time."; "There is no way elementary students knew the spelling and flags for each of these identities. This means the school had open internet, which exposed them to these concepts." *See* Pl.'s Amend. Compl. at Ex. 1.

[3] The Facebook post at issue in this case was posted on a public page called "NJ Fresh Faced Schools" on November 22, 2022. By November 30, 2022, a comment was left on the post in NJ Fresh Faced Schools from a person ostensibly from South Carolina, who noted in the comment that the post was discussed in what she described as a

5

personally disagreed with Plaintiff's views, used their positions as law enforcement, military, and school officials to have the post taken down in an act of censorship. Plaintiff further alleges that Defendants engaged in a campaign of harassment and intimidation specifically designed to chill the exercise of her free speech rights which included the following actions:

- On November 23, 2022, Defendant Schilling noticed Plaintiff's Facebook post and emailed parents and local school staff. *See* Pl.'s Amend. Compl. at Ex. 2.

- On November 25, 27, and 29, 2022, Defendant Schilling sent a series of emails to the same parents and local school staff, accusing Plaintiff of "stirring up right wing extremists." *See* Pl.'s P.I. at 5; *see also* Pl.'s Amend. Compl. at Ex. 3.

- On November 29, 2022, Defendant Schilling used his military email account to contact Defendants Lesher and Hall about his concerns regarding potential violence stemming from Plaintiff's Facebook post, and Defendant Lesher said he would forward it to Defendant Duff for his awareness. *See* Pl.'s P.I. at 5; *See* Pl.'s Amend. Compl. at Ex. 7.

- On November 30, Defendant Hall emailed Defendant Payne and regional Superintendent Zuckerman; this email was also forwarded to Defendant Duff, stating that Plaintiff's "posts have created a concern for the safety of our military children and families as they could become targets from extremist personnel/groups." Pl.'s P.I. at 6; Pl.'s Amend. Compl. Ex. 13.

- On November 30, Defendant Duff contacted the NJ Fresh Faced School's Facebook page administrator and requested she take down the post due to his concern of school violence, allegedly implying that the administrator "would be liable (and personally responsible) for any [school] violence and subject to government investigation." Pl.'s P.I. at 8. The Facebook page administrator contacted Plaintiff and informed her of this, and Plaintiff "felt like she had no choice but to agree" with the administrator's decision to take down the post, fearing that the "authorities" would "take action" against her. Pl.'s Compl. ¶84. Plaintiff then emailed Defendant Duff and objected to his "interference with her free speech rights." Pl.'s P.I. at 9; Pl.'s Amend. Compl. at Ex. 18. That same day, Defendant Duff informed Defendants Lesher, Schilling, Hall, and Vazquez that the Facebook post was removed and said that he would "continue to see if I can get additional

---

"far right extremist online publication." *See* Pl.'s Amend. Compl. at Ex. 9. The article in question was published on a blog called "Chaos and Control" on the Substack website on November 30, 2022 titled "Kiddy Sex Posters in North Hanover Township," which showed the poster wall and the specific poster Plaintiff had in her original post, and states at the end "Its [sic] time the parents address this at the next BOE meeting on December 13th." Def. Payne's Opp. Br. at Ex. A. Sixty-seven comments were posted to this article, some encouraging commenters to attend Board of Education meetings. *Id.* A close inspection of these comments discloses that the responses to Plaintiff's Facebook post went well beyond this small community and even the state.

6

        posts [by Plaintiff] removed from other social media[.]" Pl.'s P.I. at 8-9; Pl.'s Amend. Compl. at Ex. 13.

- On December 1, 2022 Defendant Payne sent out a "Letter to the Community," addressing the discussions stemming from Plaintiff's post. *See* Pl.'s P.I. at 10. The letter did not specifically identify Plaintiff or her post. *See* Pl.'s Amend. Compl. at Ex. 33.[4]

- Around December 5, 2022, Schilling made a Facebook post that Plaintiff characterizes as "appearing" to be "official" U.S. Government statements referring to Plaintiff as an "extremist" and a security threat. Pl. P.I. at 11. The Facebook post stated that "[t]he Joint Base Leadership takes this situation very seriously and from the beginning have been working with multiple state and local enforcement agencies to monitor the situation to ensure continued safety of the entire community." Pl.'s Amend. Compl. at Ex. 25.

- On December 7, 2022, Plaintiff went on air on Fox News to share her perspective about her post. Pl's P.I. at 11. Plaintiff also resigned from her school board position. Pl.'s P.I. at 15.

- On December 13, 2022, Township Police attended the North Hanover Township Board of Education meeting and required attendees to go through security screening with metal detectors, checked bags, and lined "the meeting room with a multi-jurisdictional force of armed police officers" that Plaintiff felt was a "show of force" against her. Pl.'s P.I. at 16. Plaintiff attended the meeting where she contends that she was subjected to "a barrage of verbal abuse" during the school board meeting. Pl.'s P.I. at 27.

According to Plaintiff, this unlawful campaign continues to chill her free speech rights, and it is what occasions the instant Motion for Preliminary Injunction under Federal Rule of Civil Procedure 65(a).

---

[4] The letter noted that the posters were created by students for the "Week of Respect," where students at the school were "invited to create a poster that demonstrated that [the school] was a safe place where everyone was accepted," and that "[t]he activity was voluntary and open-ended" with "no instruction associated with it." *Id.* The letter further stated that the "specific terms from the posters [were] not part of [the] curriculum" and the school was "aware that there have been numerous social media postings about this issue on a variety of pages and sites . . . We are aware that there are strong opinions. Although these opinions are being widely shared by adults outside of our school, I want to assure you that there has been no impact on student learning within the school. School is operating normally. We are also aware that this has caused safety and security concerns for many families. The safety and security of our students and staff is always of primary importance . . . . even as we responded to this situation over the past couple of days. I assure you that I have been in continuous close contact with the North Hanover Police and they have been very supportive and present for us. They are taking any risks very seriously, are aware of our concerns and have been working on their end to provide any support we need." *Id.*

### III. LEGAL STANDARDS

#### A. Motion for Preliminary Injunction

Injunctive relief is an "extraordinary remedy," and should "be granted only in limited circumstances." *Toussaint v. Twp. of Kearney*, No. 21-13814, 2021 WL 3373138 at *2 (D.N.J. Aug. 3, 2021) (citing *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)).

> A district court my grant a preliminary injunction when the movant shows:
> (1) a likelihood of success on the merits;
> (2) that it will suffer irreparable harm if the injunction is denied;
> (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and
> (4) that the public interest favors such relief.

*Doe v. Banos*, 713 F.Supp.2d 404, 410 (D.N.J. 2010), *aff'd* 416 Fed. App'x 185 (3d Cir. 2010) (quoting *Child Evangelism Fellowship of N.J., Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514, 524 (3d Cir. 2004)). The movant bears the burden of establishing the first two factors, which are considered to be the most critical. *See Stepien v. Murphy*, 574 F.Supp.3d 229, 236 (D.N.J. 2021). Thus, a failure to show a likelihood of success on the merits or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction. *South Camden Citizens in Action v. N.J. Dep't of Envtl. Prot.*, 274 F.3d 771, 777 (3d Cir. 2001).

Moreover, Plaintiff has the burden of demonstrating a clear, immediate, irreparable injury, such that any other legal or monetary remedy is inadequate. *See Tanko v. Moore*, No. 23-2187, 2023 WL 3033573 at *2 (D.N.J. Apr. 21, 2023). "Demonstrating irreparable harm is perhaps the single most important prerequisite for issuing a preliminary injunction." *Id.* "Before a court may issue preliminary injunctive relief, it must be *convinced* that the injunction is 'the only way of protecting the plaintiff from [the] harm' in question." *Id.* (quoting *Ace Am. Ins. Co. v. Wachovia*

8

*Ins. Agency Inc.*, 306 F. App'x 727, 731 (3d Cir. 2009)) (emphasis added). The injury cannot be speculative because "'[t]he dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat' of irreparable harm." *Id.* (quoting *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487 (3d Cir. 2000)).

Indeed, the Third Circuit requires a movant seeking a preliminary injunction to prove irreparable harm, even when the movant alleges a First Amendment claim. *Id.* "[T]he assertion of a First Amendment right does not automatically require a finding of irreparable injury . . . [a] plaintiff[] must show a chilling effect on free expression." *Hohe v. Casey*, 868 F.2d 69, 72-73 (3d Cir. 1989) (internal citations and quotations omitted). Even where a plaintiff has shown a likelihood of success on the merits for their First Amendment claims they are not entitled to preliminary injunctive relief unless plaintiff demonstrates that "there exists some cognizable danger of recurrent violation" of his or her legal rights. *Anderson v. Davila*, 125 F.3d 148, 164 (3d Cir. 1997). This danger, of being dissuaded from speech, must be "real or immediate" and "in the near future." *See Conchatta, Inc. v. Evanko*, 83 F. App'x 437, 442 (3d Cir. 2003). When a free speech violation claim asserts "government surveillance" as the alleged cause for "chilled" speech, the Court must determine whether the government's surveillance is ongoing and whether there is a credible threat that it will recur in the future. *Anderson*, 125 F.3d at 164. Plaintiff's evidence must be sufficient to support such findings. *Id.*

## IV.   DISCUSSION

In this case, because Plaintiff has failed to demonstrate irreparable harm, the Court will limit its analysis thusly. At the heart of the matter, Plaintiff contends she "is now afraid to speak out on the issues that motivated her original [Facebook post]" (Pl.'s P.I. at 19) and avers she has not posted on Facebook since. *See* Oral Arg. Tr. at 52:19-24. Defendants contend that Plaintiff has

not demonstrated that she is entitled to injunctive relief because she has continued to post about her experience in the aftermath of her Facebook post and the topic of sexual orientation and education at New Jersey schools on various platforms.[5] Additionally, Defendants argue that timing alone of the filing of the preliminary injunction motion—five months after the purported offending conduct—and the lack of further responses to Plaintiff and her blogs since December of 2022, defeats Plaintiff's ability to demonstrate irreparable harm.

Plaintiff's main assertion is that her First Amendment injury is sufficient to prove irreparable harm.[6] Pl.'s P.I. at 38 ("The loss of First Amendment freedoms, for even minimal

---

[5] While Plaintiff's counsel asserted in oral argument that Plaintiff's blog contains only "general remarks about educational trends" and that she's "never again going to criticize what she views, and has every right to view, transgender propaganda in local public schools," (Oral Arg. Tr. at 12:19-22), Plaintiff's blog has discussed sexuality education in elementary schools which directly relates to the topic of her Facebook post at issue. *See* Def. Payne's Opposition Br. at 17 n.6, Ex. C. For example, in February of 2023, Plaintiff published a post titled "New Jersey's LGBTQ+ Education Law," which noted "I, like many other parents in the state, have concerns about the age appropriateness of the topics mandated [to be in the elementary school curriculum]" regarding "the complexities of sexual orientation and gender identity." *See id.* at 46. More recently in May of 2023, Plaintiff published a post titled "Upholding Parental Rights: The Legal Battle Over Hanover Township's Policy 8463," which specifically discusses a policy in Hanover Township schools that would require teachers to report to parents on their children's wellbeing, including a child's sexuality, sexual orientation, transitioning, and gender identity or expression. *See id.* at 95. Defendants also note that Plaintiff has made several appearances on TV and radio discussing the post at issue in this case since her post was removed. *See* Oral Arg. Tr. at 31:23-32:9.

[6] Plaintiff alleges other, various harms in her briefing such as:
- that she resigned from her position on the School Board;
- that Defendants Schilling and Hall "threatened and called for ethics charges against her." (Defendant Schilling emailed other parents from his personal email stating that he was "pretty sure [Plaintiff] violated this district policy" relating to Board of Education members use of social networks, *see* Pl.'s Amend. Compl. at Ex. 5, questioned to the group "[a]t what point does [Plaintiff's post] justify an ethics complaint?" *see id.* at Ex. 3, and stated that he "submitted a complaint to Dr Z tonight for him to request Angela to remove her posts for violating the District bylaws[.]" *id.* at 6, Dr. Z. ostensibly is the Superintendent Dr. Zuckerman of North Burlington, *see* Pl.'s Amend. Compl. at Ex. 40; Defendant Hall emailed Defendant Payne relaying military parents' concerns per her position as the military base's school liaison: "I asked our concerned parents as to what they thought the right outcome should be and they provided everything from 'she should excuse herself for potentially violating ethics violations' to just 'removing the post all together with none further.'" *See* Pl.'s Amend. Compl. at Ex. 13; Ex. 29);
- that Defendant Duff, in private text messages, called Plaintiff "sick in the head" (in response to Defendant Payne stating that Plaintiff named a nonparty and Defendant Payne on a radio show Plaintiff was on, Pl.'s Reply Br. at Ex. A at 51-52, and that "[i]f Angela is going to be an attorney …..she should know better and keep her mouth shut," (Pl.'s P.I. at Ex. A at 64);
- that she allegedly lost a job offer due to the controversy;
- that she withdrew her children from the North Hanover Township schools; and
- that she feels like she is a pariah in her community. *See* Pl.'s Reply Br. at 20-22; Pl.'s P.I. at 19.

10

periods of times, unquestionably constitutes irreparable injury." (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). However, the Third Circuit has held that "the assertion of a First Amendment right does not automatically require a finding of irreparable injury . . . [a] plaintiff[] must show a chilling effect on free expression." *Hohe*, 868 F.2d at 72-73. To that end, Plaintiff seemingly argues that a preliminary injunction should issue because her speech is "chilled" in that she believes she is in imminent harm of additional censorship by the Defendants. In other words, Plaintiff believes that if she were to post any comments that criticizes or takes issue with "a public school district in particular about its curriculum matters regarding sexual identity, [or] sexual orientation" on Facebook, that Defendants would proceed to remove her posts. Oral Arg. Tr. at 24:22-25; 54:17-19; 55:19-56:4. To further support her contention that her speech has been chilled, Plaintiff argues that her current blog posts do not relate to the content addressed in her Facebook post. Pl.'s Reply Br. at 17.[7] In addition, to satisfy the government surveillance aspect of her claim, Plaintiff relies on the Defendants' refusal to acknowledge their violative conduct and their "arrogant official impertinence" as sufficient for this Court to draw an inference of future harm to warrant the extraordinary relief of a preliminary injunction. Pl.'s P.I. at 39-40.

Defendants submit that preliminary injunction is not warranted because Plaintiff cannot demonstrate imminent harm given the lapse in time of more than five months between the alleged violative conduct and filing for the preliminary injunction. Def. Payne's Opp. Br. at 4; Mil. Def.'s Opp. Br. at 12-13, 22-23; Oral Arg. Tr. at 33:2-18. Defendants also argue that Plaintiff's fear of repeated censorship is unfounded because Defendants have not, and are not currently engaging in

---

These harms are, however, not irreparable. Many of these alleged harms could be redressed through financial compensation, others are simply personal choices made by Plaintiff, or are unkind but personal opinions of others, all of which are not sufficient under the standard of irreparable harm.

[7] *See supra* at n.4.

any conduct which could be deemed as violating Plaintiff's freedom of speech, pointing to the fact that Plaintiff has continued to post on her blog about these topics and Defendants have not engaged. Def. Duff's Opp. Br. at 26-27; Oral Arg. Tr. at 30:7-10. Defendants also rely on their representations that none of them are continuing to monitor Plaintiff's social media activity. *See* Oral Arg. Tr. at 29:2-30:10; 31:3-33:15.

The Court finds that Plaintiff fails to establish imminent harm by Defendants sufficient to warrant the injunctive relief she seeks for several reasons. First, Plaintiff has not met her burden of showing that any Defendant has engaged in any action in response to her post or speech since December 2022.

More specifically, Defendant Payne issued a single "letter to the community" on December 1, 2022 to address the debate occurring about the Facebook post without naming or intimating any threats to Plaintiff. Def. Payne's Opp. Br. at 16-17; *see also* Pl.'s Amend. Compl. at Ex. 33. Plaintiff has not alleged any further acts by Defendant Payne with regard to her speech or expression. While Plaintiff points to private texts between Defendants Payne and Duff reacting to Plaintiff's actions in December, Defendant Payne did not overtly state or intimate any threat against Plaintiff. Pl.'s P.I. Ex. A.

With regard to Defendant Duff, the undisputed record confirms that he did contact the Facebook administrator of "NJ Fresh Faced Schools" and request that the November 22, 2022, post be taken down. *See* Pl.'s P.I. at 8; *see also* Pl.'s Amend. Compl. at Ex.16. However, the only other action that Plaintiff attributes to Defendant Duff relates to her perception that Defendant Duff increased security at the Board Meeting on December 13, 2022 as a "show of force" to chill her speech. *See* Pl.'s P.I. at 16. There is no evidence that since December of 2022 Defendant Duff has engaged in any censorial or surveillance type activity against Plaintiff.

Plaintiff contends that Defendant Schilling should be enjoined because he shared his concerns about Plaintiff's post with Defendants Lesher, Hall, and other local parents, and wrote public Facebook posts of his own related to Plaintiff's post. Pl.'s Amend. Compl. at Exs. 2-11, 25. However, Plaintiff does not ascribe any other conduct to Defendant Schilling since December 2022 related to her post or speech. Similarly, although Plaintiff seeks to enjoin Defendant Hall, her position as the liaison between the Joint Base and the School District requires her to communicate concerns from military personnel and their families to the appropriate administrators, and Plaintiff has provided no evidence to support the inference that Defendant Hall had any further involvement in any "surveillance" or continued threat to Plaintiff's speech.

Plaintiff's request to enjoin Defendant Lesher, who reached out to Defendant Duff "to bring awareness" of the concern that *others* (not Plaintiff) would be inspired to be violent, (*see* Pl.'s Amend. Compl. at Exs. 8, 9), and Defendant Vazquez, who provided the information given to him by Defendants Schilling and Lesher to other local and regional authorities that would normally monitor for violence or other emergent threats, and specifically stated that those agencies would look out for extremist groups and their activities, not Plaintiff individually. *See* Pl.'s Amend. Compl. at Exs. 10, 15 ("I am sending this to our partners . . . [b]oth agencies analysts keep an eye on far right/hate groups."). Again, here, Plaintiff does not allege any continued threat or current surveillance by Defendants Lesher or Vazquez relating to her post or speech.

Additionally, Plaintiff does not even allege that Defendants Grimmett, Adams, and Wisniewski engaged in any acts to address her speech. Rather, Plaintiff contends that they engaged in a "cover up" to distance the base from Defendant Schilling's stance, and thus tacitly approved of his actions and responses to Plaintiff's Facebook post. *See* Pl.'s P.I. at 14. Again, Plaintiff does not allege any continued threat or current surveillance by these Defendants. Moreover, all

13

Defendants point out that Plaintiff has continued to express her opinions, albeit in different forums, about the very issue that brought her consternation. *See* Oral Arg. Tr. at 31:23-32:9; 42:17-44:16; *see also supra* n.4.

Next, Plaintiff's argument that Defendants' failure to acknowledge that their behavior violated her right to freely speak and their "arrogant [] impenitence" creates an inference that Defendants will "censor" her again is unavailing. P.I. at 39-40. This Court finds that an inference is not sufficient to demonstrate the applicability of an extraordinary remedy—that of a preliminary injunction. Indeed, past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects.[8] *See Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).[9]

Therefore, given that there is no evidence that any of the Defendants have acted, alone or in concert, since December of 2022, in relation to any of the various statements, posts, or comments made by Plaintiff,[10] this Court is compelled to conclude that "an injunction [] unnecessary and

---

[8] Additionally, Plaintiff's argument that this kind of censorship via surveillance is "capable of repetition, yet evading review" is not applicable here: this doctrine only applies in exceptional situations, and only where the named plaintiff can make a reasonable showing that he or she will again be subjected to the alleged illegality. *Lyons*, 461 U.S. at 109. Plaintiff has made no such showing here.

[9] The Military Defendants cite to *Los Angeles v. Lyons* for the proposition that Plaintiff does not have "Article III standing" to bring a preliminary injunction. The holding in *Lyons* stemmed from the fact that Lyons' future injury was too speculative to satisfy the "prerequisite of equitable relief" for an injunction. *Id.* at 110. Effectively, the *Lyon's* Court characterized the failure to satisfy the prerequisites for an injunction as a failure of standing *only as to* as to a plaintiff's entitlement to equitable relief. *Id.* at 109 ("We agree that Lyons had a live controversy with the City. Indeed, he still has a claim for damages against the City that appears to meet all Article III requirements. Nevertheless, the issue here is not whether that claim has become moot but whether Lyons meets the preconditions for asserting an injunctive claim in a federal forum."). The Court agrees that here, Plaintiff also fails to demonstrate the same prerequisite of equitable relief but declines to describe this failure as an issue of standing in the body of this Opinion so as to avoid confusion regarding the standing of the underlying claims of the case at bar. The Court takes pains to avoid creating such confusion precisely because the Court need not and does not reach the merits when it finds that a plaintiff has failed to carry their burden to demonstrate irreparable harm as a necessary condition for equitable relief. Regardless of how this failure is described, the result is the same: Plaintiff will not receive her injunction.

[10] Aside from the Joint Bases' statements to Fox News media inquiries, the last of which was in February 2023, relating to what Plaintiff describes as a "cover up" of the individual military Defendants' involvement, rather than an overt action against Plaintiff specifically.

14

unsupportable." *Anderson*, 125 F.3d at 164 (noting that where the Government said that it had terminated its surveillance of the movants, if true, would render the remedy of an injunction unnecessary and unsupportable).

While Plaintiff acknowledges that she has a blog, (Oral Arg. Tr. at 12:19) she argues that Defendants should not be rewarded for "picking on an unusually hardy speaker[]." Pl.'s Reply Br. at 25-26. Plaintiff contends that, to determine whether a plaintiff has been sufficiently "chilled" to warrant injunctive relief, such behavior, or lack thereof, must be measured against the objective standard person of reasonable firmness. *Id.* This is misplaced. Indeed, Plaintiff misconstrues the application of the objective "person of ordinary firmness" standard as it relates to the instant motion. The Court is to apply the reasonable person standard only when addressing the merits of Plaintiff's claim of retaliation in the exercise of her right to free speech. *See Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017) ("To plead retaliation for the exercise of First Amendment rights, a plaintiff must allege (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.") (internal citation and quotations omitted). Here, the Court is not addressing the merits of Plaintiff's claim because Plaintiff has failed to demonstrate irreparable harm. As such, the Court has taken particular care not to address the merits of Plaintiff's case in this Opinion, as it is unnecessary for the determination of the applicability of a preliminary injunction and premature given the posture of the case. In other words, the actions relied upon by Plaintiff in support of the issuance of preliminary injunction are insufficient to demonstrate an imminent or continuous threat requiring the imposition of injunctive relief. Whether or not these same actions support Plaintiff's claim that

any or all of the Defendants have violated her rights pursuant to the First Amendment will surely be developed during the discovery phase of this case.

## V.  CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Preliminary Injunction is **DENIED**. An order consistent with this Opinion will be entered.

November 17, 2023

KAREN M. WILLIAMS, U.S.D.J.